Whitaker, Judge,
delivered the opinion of the court:
This cáse is before us on exceptions to the report of the Commissioner and for final decision.
Plaintiff sues for the cost of disposing of trash collected by it from the military reservation of Fort Myer in Arlington County, Virginia. Arlington County charged plaintiff $2,473.95 for disposing of this trash in its incinerator. For this amount plaintiff sues.
Pursuant to invitation, plaintiff bid on a contract for the removal of trash from Fort Myer. Both the invitation for bids and the contract entered into contained the following ■ in section 1 of the Special Conditions:
The work covered by these specifications consists of furnishing all trucks and labor necessary to collect all refuse from points designated on applicable drawings and delivery of this refuse to such a disposal point off the post as may be chosen by the contractor. This off post disposal area will be the responsibility of the contractor, and all refuse will become the property of the contractor and will be removed from the post, except as hereinafter specified.
Section 6 thereof reads:
Disposal: The Contractor will be responsible for the disposal of all refuse, off the post at such place or places chosen by him. The Government will in no way be responsible for the refuse once it is on the contractor’s trucks.
In addition, section 16 required the bidder to investigate the conditions surrounding the work, the character of the facilities needed for the prosecution of the work “and all other matters which can in any way affect the work or the cost thereof under this contract.” And it was further provided: “Any failure of the contractor to acquaint himself with all available information concerning these conditions will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work. * * *”
Since the contract quite clearly cast upon the contractor the duty of disposing of the trash, it is difficult to see how it can charge the defendant with the cost thereof.
*156 The findings show that the contracting officer, before letting such a contract for the previous year, found upon investigation that the trash could not be dumped on the Arlington County dump and that surrounding counties and also the District of Columbia would not permit trash from Port Myer to be disposed of through their incinerators. It was for this reason that he incorporated in the contract for the previous year and for the year in question such explicit provisions casting upon the contractor the responsibility for disposing of it.
In its effort to hold defendant liable, plaintiff relies solely upon the fact that Arlington County opened an incinerator about six months before the present contract was let, and that on the date the bids were opened it addressed and mailed to the Commanding Officer at Fort Myer a letter notifying him that trash from Fort Myer might be disposed of in the County incinerator upon the payment of $1.00 per ton. Plaintiff complains that this was not called to its attention, and that the failure to do so constituted the withholding of material information amounting to a misrepresentation.
■ It is clear that this position is untenable. In the first place, plaintiff’s bid was submitted the day before Arlington County’s letter was mailed to the Commanding Officer; and, further, it is almost impossible that the Commanding Officer should have received this letter before the bids were opened, it having been mailed on the day the bids were opened; and certainly his subordinate, the Sanitary Engineer, was not apprized of it until thereafter. Nor does the proof show that he had knowledge of it prior to awarding the contract to plaintiff.
But, whether he had knowledge of it or not is really immaterial, because it is not shown that the contracting officer knew that plaintiff meant to dispose of the trash through this incinerator, and, even if he had known it, he was not called upon to apprize plaintiff of the cost of doing so, because the sole responsibility for disposing of the trash was on the plaintiff, and the contract made it plaintiff’s duty to investigate conditions, including the cost of disposing of it. If plaintiff wanted to dispose of it through the Arling *157 ton County incinerator, it was obliged to ascertain the possibility thereof and the cost thereof. The contracting officer knew this and had a right to assume that plaintiff had made the necessary investigation and had ascertained the cost of doing so.
There is no basis for recovery by plaintiff, and its petition is accordingly dismissed.
Laeamoee, Judge; Madden, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, at all times material herein, was and is a corporation organized and existing under the laws of the State of Maryland, having its principal place of business in Washington, D. C. The plaintiff’s business is that of trash and refuse removal.
2. Prior to July 1950, refuse at Fort Myer, an Army installation in Arlington County, Virginia, was disposed of by Army personnel in an incinerator on the post. In 1950, tbs authorities at Fort Myer, faced with a 25 percent reduction in personnel and finding its incinerator in need of major repairs, decided that it would be less expensive if the incinerator were closed down and the refuse handled by a private contractor. It was decided to accept bids for the work in question. Mr. J. Ashby Williams was chief engineer and assistant contracting officer for engineer functions at Fort Myer, and as such was responsible for the drafting of the special conditions of the proposed contract. The refuse could not be disposed of in Arlington County because the dump operated by Arlington was of small size and therefore did not accept refuse collected from Federal areas. Consequently, prior to the drafting of special conditions, Mr. Williams conducted an investigation of facilities in surrounding communities to determine what arrangements would be available for the disposal of refuse collected from Fort Myer. Mr. Williams found that the incinerators and *158 other disposal facilities operated by surrounding counties and the District of Columbia would not accept refuse originating at Fort Myer. Consequently he included the following provision's in the contract:
Special Conditions
1. Scope oe work :
a. The work covered by these specifications consists of furnishing all trucks and labor necessary to collect all refuse from points designated on applicable drawings and delivery of this refuse to such a disposal point off the post as may be chosen by the contractor. This off post disposal area will be the responsibility of the contractor, and all refuse will become the property of the contractor and will be removed from the post.
b. The term “Refuse” includes trash, ashes, debris and all garbage (edible and non-edible not picked up by edible garbage contractor.)
* # # # *
6. Disposal: The Contractor will be responsible for the disposal of all refuse, off the post at such place or places chosen by him. The government will in no way be responsible for the refuse once it is on the contractor’s trucks.
3. On June 23,1950, plaintiff, by its vice president and secretary, Philip Shayne, in response to invitation No. 44-040-50-41, bid the sum of $4,250 per month on the contract for the collection of refuse at Fort Myer for the period July 1,1950, through June 30,1951.
4. Plaintiff, prior to bidding on the contract for 1950-51, was informed that he would have to make his own arrangements for the disposal of refuse collected. Plaintiff planned to dump the refuse in Prince William County where there were no restrictions on private dumping.
5. Plaintiff was not low bidder and the contract was awarded to Super Service Trash Company which had bid $2,995 per month. During the term of the contract, July 1, 1950, to June 30, 1951, Super Service, because it was not allowed to dump in Arlington County, utilized a private dump in Fairfax County for the disposal of the refuse. The fact that it did so was known to the plaintiff.
*159 6. In January of 1951 (during the term of the Super Service refuse collection contract), Arlington County opened its own incinerator for the first time. Confusion incident to its first months of operation resulted in no policy being established as to whether the dumping of refuse originating from Federal areas would be permitted. During this period one or two loads originating from Federal areas other than Fort Myer were disposed of at the incinerator upon specific permission of the sanitary engineer, but other than that there was no dumping in Arlington of refuse originating from Federal agencies.
7. Prior to the termination of the first year’s contract, authorities at Fort Myer decided to open bids for the refuse collection contract at Fort Myer for the period July 1,1951, to June 30, 1952. Mr. Williams again investigated the dumping situation, and since conditions had not changed, he made only minor revisions in wording of the contract terms. Sections 1 and 6 of the special conditions of the invitation to bid which were also included in the contract awarded to the plaintiff are as follows:
Special CONDITIONS
1. Scope op work:
a. The work covered by these specifications consists of furnishing all trucks and labor necessary to collect all refuse from points designated on applicable drawings and delivery of this refuse to such a disposal point off the post as may be chosen by the contractor. This off post disposal area will be the responsibility of the contractor, and all refuse will become the property of the contractor and will be removed from the post, except as hereinafter specified.
b. The term “Refuse” as pertains to items to be removed by contractor includes trash, ashes, debris and all garbage (edible and non-edible not picked up by edible garbage contractor) j it does not include those items of salvageable material listed in paragraph 23, when placed in containers provided and clearly indicated “Salvageable Material,” Salvageable Material will be picked up by the Government.
* * * *
6. Disposal: The Contractor will be responsible for the disposal of all refuse, off the post at such place or *160 places chosen by him. The Government will in no way be responsible for the refuse once it is on the contractor’s trucks.
The contract, as well as the invitation to bid, also contained the following provision:
16. Sins INVESTIGATION AND REPRESENTATIONS: The-contractor acknowledges that he has satisfied himself as to the nature and location of the work, the general and local conditions, particularly those bearing availability of labor, water, and roads; uncertainties of weather, or similar physical conditions at the site; the character of equipment and facilities needed preliminary to and during the prosecution of the work and all other matters which can in any way affect the work or the cost thereof under this contract. Any failure by the Contractor to acquaint himself with all the available information concerning these conditions will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government assumes no responsibility for any understanding or representations made by any of its officers or agents during or prior to the negotiation and execution of this contract unless (1) such understanding of representations are expressly stated in the contract; (2) the contract expressly provided that responsibility therefor is assumed by the Government. Representations made but not so expressly stated and for which liability is not expressly assumed but by the Government in the contract shall be deemed only for the information of the Contractor and the Government will not be liable or responsible therefor.
As part of the investigation by Mr. Williams referred to above, he called Mr. Doe, the sanitary engineer at Arlington County. Mi*. Doe could not give him any definite information as to when, if at all, the refuse from Fort Myer might be sent to the Arlington facilities for disposal.
8. Although the plaintiff’s officers knew from having bid' on the contract for refuse disposal for the period July 1950 to June 1951, that Arlington County would not permit the disposal of refuse from Fort Myer during that period, when it was preparing its bid on the invitation for the period July 1951 through June 1952, it did so on the assumption that it would be permitted to dump the refuse at the Arlington *161 incinerator without charge. This resulted from a discussion between Philip Shayne, plaintiff’s vice president, and some official in Arlington County. When the incinerator began operations in January 1951, Shayne asked whether there would be any dumping charge, and he was told that there would be none. He knew when the question was put to the-county officials and the negative answer was received that Fort Myer refuse was not being sent to the incinerator. No charge has ever been imposed by Arlington County for the disposal of refuse from any source in Arlington other than Federal Government agencies.
9. Invitations to bid were issued on June 20,1951, for the' collection of refuse at Fort Myer, Arlington, Virginia, for the period July 1,1951, through June 30,1952. The invitation stated that bids would be received until June 27, 1951,. at 12:30 p. m.
10. The plaintiff submitted its bid dated June 26,1951, by which it offered to perform the disposal service at a monthly charge of $2,237. On June 29, 1951, the contract for the work was awarded to the plaintiff in accordance with the terms of the invitation to bid. By modification 1, issued May 8,1952, the monthly rate was increased by $269.23 per month because of additional work required.
11. The only other bids received under the invitation were $3,400 per month and $3,990 per month.
12. On the day on which bids were opened, June 27,1951,, Mr. Doe, sanitary engineer of Arlington County, addressed and mailed the following letter to the addressee:
Commanding Officer,
Fort Myer,
Arlington County,
Virginia
Dear Sir : Beginning July 1,1951 Arlington County will permit United States Government Agencies within the County to dispose of their refuse in the Arlington Incinerator if they so desire. Arlington County will charge the United States Government Agencies the actual cost per ton of burning the refuse. The cost for the fiscal year 1951-52 will be $1.00 per ton.
Very truly yours,
F. H. Doe, Jr., Sanitary Engineer..
*162 There is no evidence in the record as to when the above letter was received by the post engineer at Fort Myer, which office had issued the invitation to bid. There is no evidence in the record as to whether the contracting officer prior to the award of the contract had actual knowledge of the receipt by the defendant of the above letter.
13. The contents of the letter quoted in the preceding finding were not communicated to the plaintiff.
14. Except as set out in finding 8, plaintiff made no inquiry of the Arlington authorities, preparatory to the making of its bid, concerning a possible charge for burning the refuse from Fort Myer at the Arlington incinerator, where the plaintiff intended to dispose of such refuse.
15. The plaintiff first became aware of a charge for the use of the Arlington County incinerator for the disposal of trash from Fort Myer when its trucks, hauling the trash pursuant to the contract in suit, were given a dumping ticket at the incinerator showing that a charge for such dumpings would be imposed.
16. Shortly before October 23,1951, Arlington County sent an invoice or bill in the sum of $630.35 to the post engineer at Fort Myer covering trash and garbage disposal at the Arlington County incinerator from July 1, 1951, through' September 30, 1951, at the rate of one dollar per ton. By letter of October 23, 1951, this invoice was returned to the director, Department of Finance, Arlington County, with information that the plaintiff had contracted with Fort Myer for refuse collection and by the terms of its contract was responsible for the collection and disposal of refuse from Fort Myer.
17. The sanitary engineer of Arlington then wrote to the plaintiff on October 30, 1951, in the following terms:
. Since July 1,1951, Arlington County has been charging Federal Government installations which dispose of their refuse at the Arlington Incinerator.
Our records indicate that you haul refuse from Fort Myer. We have billed Fort Myer for the cost of disposing of their refuse but they have returned the bills. A copy of their letter is enclosed.
Please contact the Post Engineer at Fort Myer and .straighten this matter out.
*163 18. On November 26, 1951, the plaintiff requested compensatory relief from the contracting officer by reason of the dumping charge imposed by Arlington County for refuse from Government installations hauled to its incinerator. This matter was discussed with the contracting officer on December 1, 1951, and confirmed by letter of February 6, 1952, denying such relief. The plaintiff’s attention was referred to paragraph 6 of the special conditions quoted in finding 7.
19. The plaintiff on February 8, 1952, appealed from the contracting officer’s decision. On April 9, 1952, the decision of the contracting officer was affirmed on behalf of the Secretary of Defense by the Chief, Purchases Branch, Procurement Division, at Fort Myer.
20. In order to continue the use of the incinerator for the contract period, the plaintiff was required to and did pay to Arlington County the sum of $2,473.95 in four separate payments, one for each quarter.
CONCLUSION OP LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and its petition is dismissed.